# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 05-21215-CIV-TORRES

CONSENT CASE

JACK EDMUNDS, *et al.*,

    Plaintiffs,

v.

ALAN LEVINE, in his official capacity as
SECRETARY, AGENCY FOR HEALTH
CARE ADMINISTRATION OF THE
STATE OF FLORIDA,

    Defendant.

_____/

## ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter is before the court on Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses [D.E. 128].[1] The Court has examined the motion along with Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Litigation Costs [D.E. 129]; Bill of Costs [D.E. 130]; Defendant's Response and Memorandum in Opposition to

---

[1] In accordance with the provisions of 28 U.S.C. § 636 (c), the parties to the above-captioned civil matter, by and through counsel, voluntarily consented to have a United States Magistrate Judge decide the following matter and issue a final order or judgment with respect thereto: (1) Motions concerning Discovery, (2) Motions for Costs, (3) Motions for Attorney's fees, (4) Motions for Sanctions, (5) Motions to Dismiss, (6) Motions for Summary Judgment, (7) All other Pre Trial Motions, and (8) Jury or Non-Jury Trial on Merits.

Plaintiffs' Motion for an Award of Attorneys' Fees and Litigation Costs [D.E. 148]; and Plaintiffs' Reply Memorandum in Support of Their Motion for an Award of Attorneys' Fees and Litigation Costs [D.E. 152].

After considering the parties' filings as they relate to the amount of fees that should be awarded to Plaintiffs' counsel, and the record in this case, the Court finds, for the reasons discussed below, that counsel be awarded $280,217.70 in reasonable attorneys' fees and $8,119.18 in costs incurred in connection with this case, for a total award of $288,336.88.

## I.  BACKGROUND

Plaintiffs are Medicaid recipients who challenged a policy of the Florida Agency for Health Care Administration ("AHCA") to deny reimbursement under the federal Medicaid program for prescriptions for the drug Neurontin and/or its generic equivalent, Gabapentin (collectively referred to herein as "Neurontin"), except when prescribed for four indications or uses: adjunctive therapy for partial seizures (including partial seizure refractory); postherpetic neuralgia; diabetic neuropathy; and amyotrophic lateral sclerosis ("ALS").  AHCA's policy on Neurontin, which was announced in "Medicaid Changes Effective July 1st, 2004, Neurontin Label Indications and Dosing," took effect on July 1, 2004 (the "Neurontin policy").  Plaintiffs suffer from neuropathic pain resulting from conditions other than the four identified above. Plaintiffs and their treating physicians or psychiatrists claim that Neurontin is one of the first-line medications for neuropathic pain, is a relatively safe and inexpensive

drug widely used to treat nerve-related pain and some psychiatric disorders, and is medically necessary for the treatment of their conditions.

The Plaintiffs filed this case after their requests for Medicaid coverage were denied by the Defendant through application of the Defendant's Neurontin Policy. Their complaint asked the Court to certify this case as a class action and to enter injunctive relief, including notice relief to Medicaid-participating providers and class members.

The Plaintiffs argued that the Defendant's Neurontin policy violated the Medicaid Act's requirement that outpatient drugs be covered for their "medically accepted indications," defined by the Act as "any use . . . which is approved under the Federal Food, Drug and Cosmetic Act . . . or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(I) [the American Hospital Formulary Service Drug Information, United States Pharmacopeia-Drug Information, and the DRUGDEX Information System]." 42 U.S.C. §§ 1396r-8(d)(1)(B), (k)(6).

On February 15, 2006, the Court entered judgment for the Plaintiffs, affording them all the relief they sought. The Court also certified a class. The Court's Order granting summary judgment and a permanent injunction ordered the Defendant to: (1) refrain from continuing to implement the July 2004 Neurontin policy; (2) adopt a written policy that ensures that a prescription for the covered outpatient drug Neurontin will be reimbursed by Defendant if the drug is cited in either the drug labeling or in at least one of the drug compendia cited at 42 U.S.C. § 1396r-8(g)(1)(B)(I); (3) publish notice to all physicians and pharmacists that their patients can

resubmit a prescription for Neurontin/Gabapentin, along with an amended prior authorization form; and (4) provide written notice to class members whose prescriptions were denied since July 2004 informing them that they can submit new prescriptions and prior authorization requests.

Defendant initially appealed but later resolved the case and disposed of the issues on appeal. The parties also settled the Plaintiffs' claim for attorneys' fees for the appeal. The parties are back before this Court on the sole issue of the Plaintiffs' trial court fees. As Plaintiffs are stipulated to be the prevailing parties, Plaintiffs' counsel seeks reimbursement of the following amounts for attorneys' fees and costs incurred during the proceedings [D.E. 128]:

| Attorney | Hours | Rate/Hr. | Lodestar |
|---|---|---|---|
| Miriam Harmatz | 394 | $425 | $167,450.00 |
| Jane Perkins | 254.3 | $425 | $108,077.50 |
| Neil Kodsi | 101.9 | $325 | $ 33,177.50 |
| Shawn Boehringer | 64.7 | $290 | $ 18,763.00 |
| Jennifer Wimberly | 37.2 | $175 | $  6,510.00 |
| Sub-Total | 852.1 | | $333,918.00 |

Reduced for Billing Judgment on Advice of Expert (2% reduction)  $ (6,678.36)

**TOTAL Fees**                                                                                           **$327,239.64**

Expenses to date
| | |
|---|---|
| Filing fees, transcripts; service of process | $  2,130.37 |
| Travel | $  1,979.33 |
| Postage/Fax | $    288.81 |
| Legal Research | $  3,570.67 |
| Pro Hac Vice Motions | $    150.00 |

**TOTAL Expenses**                                                                                      **$  8,119.18**

**TOTAL FEES AND EXPENSES REQUESTED**                                             **$335,358.82**

In support of its petition, Plaintiffs' counsel has submitted affidavits from each individual attorney, the affidavit of their fee expert, Stephen Hanlon[2], a summary of fees and costs charged and not charged, bill of costs, and an inventory of litigation expenses.

In response, Defendant submitted an affidavit from his fee expert, Stanley Kiszkiel, together with supporting appendices.[3] Based on Mr. Kiszkiel's review, it is of his opinion that the Plaintiffs expended, and are seeking compensation for, more hours than were necessary to successfully litigate this case. His review calls into question what, if any, billing discretion was exercised by counsel. Mr. Kiszkiel's main criticisms are counsel's lack of specificity, the use of block billing, and overstaffing. With respect to specificity, he claims it is often difficult to ascertain what tasks a particular attorney was performing. Thus, one cannot determine if fees should be awarded for certain entries. With respect to block billing, it is impossible to determine how much time an attorney expended on a particular project because matters are lumped together. Mr. Kiszkiel also claims that an examination of the billing records discloses significant duplicate billing.

---

[2] As set forth in his declaration, Mr. Hanlon, is a partner with the Miami, Florida law firm of Holland & Knight, LLP. He began practicing in Florida in 1976 and for most of his career, he has concentrated his practice in civil rights and constitutional litigation. Mr. Hanlon has extensive experience representing attorneys seeking fee awards in the State of Florida and has testified frequently as an expert on attorney's fees throughout the State of Florida.

[3] As set forth in his affidavit, Mr. Kiszkiel has been practicing law for over 30 years. His practice has always been in civil rights with an emphasis on employment law issues. He is "av" rated and Board Certified by the Florida Bar. Mr. Kiszkiel has tried numerous cases in federal courts and has served as a fee expert in other matters.

## II.  ANALYSIS

### A.  *Calculation of Reasonable Attorneys' Fees*

In awarding attorneys' fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  Any fees awarded must be reasonable and fall within the guidelines the Eleventh Circuit has promulgated. *Norman v. Housing Auth. of Montgomery*,836 F.2d 1292, 1299-1302 (11th Cir. 1988). It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper in accordance with those parameters.  *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("The *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours."); *Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1493 (11th Cir. 1994) ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

The Eleventh Circuit has adopted the lodestar method for determining reasonable attorneys' fees. The lodestar method consists of determining the reasonable hourly rate, and multiplying that number by the number of hours reasonably expended by counsel.  *E.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299; *Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).

### *1.     Reasonable Hourly Rates*

When calculating the lodestar amount, the Court first determines the reasonable hourly rate. This Circuit defines the reasonable hourly rate to be the "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman,* 836 F.2d at 1299. Several well established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[4]

The party who applies for attorneys' fees is responsible for submitting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates [and] . . . satisfactory evidence necessarily must speak to rates actually billed and paid in similar

---

[4]     The twelve (12) *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

lawsuits."). In the end, however, the Court is deemed an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

There is no doubt that the time and labor required to pursue this case was tremendous. The time spent on this case by Plaintiffs' counsel is detailed in their declarations and supporting exhibits [D.E. 127]. Plaintiffs' counsel needed to understand the technicalities of the Florida prescription drug program, the Federal Food, Drug and Cosmetic Act labeling provisions, and the federal Medicaid program. With respect to the Medicaid Act alone , Judge Friendly of the Second Circuit Court of Appeals has called that program "almost unintelligible to the uninitiated." *Friedman v. Berger,* 547 F.2d 724, 727, n. 7 (2nd Cir. 1976).

Here, detailed statutory provisions of the Medicaid drug rebate and coverage provisions were at issue, as were the workings of the congressionally-designated compendia referenced by the Medicaid Act. The case involved complex medical issues interwoven with the even more complex Medicaid statute, which some courts have likened to the "Serbonian bog." *Cherry v. Magnant,* 832 F. Supp. 1273 n.4 (S.D. Ind. 1993). Counsel very competently pursued this complicated case, as best demonstrated by the success they achieved in the face of a spirited defense. As their Declarations and resumes reveal, Plaintiffs' attorneys are highly experienced in their respective fields.

Moreover, the fees billed to these Plaintiffs were totally contingent. However, customary fees were not noted for most of the attorneys in their motion or declarations. Most of the attorneys relied solely on the affidavit of a fee expert in selecting their requested hourly rate.

With that in mind, the Court has reviewed the documentation submitted by Plaintiff's counsel to determine the prevailing market rate in this legal community for "similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299. Plaintiffs' counsel rely on the affidavit of Mr. Hanlon in support of their hourly rates. According to Mr. Hanlon, based on his knowledge of the range of rates that attorneys with similar experience and expertise charge for similarly complex work, the prevailing market rate for Plaintiffs' counsel is as follows:

| Attorney | Non-Contingent Hourly Rates |
|---|---|
| Miriam Harmatz | $400 - $450 |
| Jane Perkins | $375 - $425 |
| Shawn Boehrinher | $275 - $325 |
| Jennifer Wimberly | $175 - $225 |

(a)  *Miriam Harmatz*

Miriam Harmatz was lead counsel for Plaintiffs in this case.[5] After consultation with Plaintiffs' fee counsel, Mr. Steven Hitov, and fee expert, Mr. Hanlon, she requested an hourly rate of $425. According to Mr. Hanlon, this rate is in the middle of the prevailing market range for lawyers of comparable skill and experience in the

---

[5]  Information was taken from "Declaration of Miriam Harmatz in Support of Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses and Costs," p.12 [D.E. 127].

Southern District of Florida. Ms. Harmatz is a senior health attorney with Florida Legal Services, Inc., a non-profit organization representing low income Floridians on a variety of issues including access to health care. She is one of two attorneys in the State of Florida specializing exclusively in advocacy on behalf of Medicaid beneficiaries.

Each attorney had specific assignments and made distinct contributions. Ms. Harmatz was responsible for the most hours billed in this case. As lead counsel, she had the responsibility of case development, preparation of written work product, and oral argument on the motion for preliminary injunction. She was also responsible for identifying and working with Plaintiffs' two experts. In addition, Ms. Harmatz was responsible for coordinating communication among various member of the litigation team. The course of litigation included a motion for preliminary injunction, class certification, summary judgment, and a summary statement.

This Court recognizes that Ms. Harmatz is a fine public interest lawyer, well experienced in these matters. The requested rate of $425 may be within the range of the prevailing market for lawyers of comparable skill and experience in the Southern District of Florida. Because it is within a court's ultimate discretion to adjust the hourly rate or fees claimed to an amount it deems proper, this Court finds that a rate of $400 per hour for Ms. Harmatz is a more reasonable rate to apply. This hourly rate falls within the guidelines the Eleventh Circuit has promulgated in *Norman*.[6]

---

[6] Frankly, even this hourly rate could have been reduced further, but given the lack of opposition by the Defendant to the requested hourly rate the rate is reasonable and justified.

### (b) *Jane Perkins*

Jane Perkins is the Legal Director of the National Health Law Program.[7] She has worked there for over twenty years. The National Health Law Program is a non-profit law firm that provides technical and co-counseling assistance to poverty law and protection and advocacy attorneys and to clients, nationwide, on the range of health issues affecting the poor. Over the years, she has served as lead or co-counsel in a number of medicaid cases. Ms. Perkins worked with Ms. Harmatz on all aspects of the case. In particular, her work focused on developing the legal theory of the case, strategic decision making, and preparation of all written materials. Ms. Perkins was the primary author of significant pleadings, including the Memorandum in Support of Summary Judgment, the Reply Memorandum in Support of Summary Judgment, and the Summary Statement of the Hearing. She also participated in witness examination at the hearing and was responsible for oral argument on motion for class certification.

Again, this court acknowledges that Medicaid cases can be among the most difficult. Ms. Perkins requested the hourly rate of $425 based on her understanding of the range charged by lawyers with similar experience and qualifications. However, this amount is the maximum non-contingent hourly rate proffered by Mr. Hanlon. The range he determined was $375 to $425. Ms. Perkins requested this rate despite the fact that her declaration states that she was previously awarded $265 an hour. *See* Perkins Decl. ¶ 9. In addition, Ms. Perkins states that in 2002 she charged $325 an

---

[7] Information was taken from "Declaration of Jane Perkins Supporting Plaintiffs' Motion for Attorneys' Fees and Costs," p. 51 [D.E. 127].

hour for a case. *Id.* She is now requesting a full $100 more per hour. The Court finds that a reduction in the requested hourly rate to $375 is reasonable.

Both the reductions of Ms. Harmatz and Ms. Perkins are appropriate under the circumstances and are commensurate with the prevailing market rates for comparable skills and experience in the South Florida Legal Market. With these revisions, the total fees requested for Ms. Harmatz is $157,600, and for Ms. Perkins the fee is $95,362.50. This would reduce the total fees requested from $333,918.00 (without the 2% across the board reduction) to $311,353.00.

### 2.   *Hours Reasonably Expended*

The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiff's counsel. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia,* 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court must disallow those hours requested that are excessive and should not be assessed against Defendants. Fee applicants must exercise what the Supreme Court has termed "billing judgment." *ACLU v. Georgia*, 168 F.2d at 428 (quoting *Hensley*, 461 U.S. at 434). "[R]easonably competent counsel do not bill hours that are 'excessive, redundant, or otherwise unnecessary." *Yahoo!, Inc.,* 329 F. Supp. 2d at 1183 (also quoting *Hensley*, 461 U.S. at 434).

Consequently, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from [her] fee submission." *Id.* The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount of fees to properly and reasonably award. *ACLU of Georgia,* 168 F.3d at 427. The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded. *Id.*

At the same time, the party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *Id.* In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301.

The requirement for specificity in petitions for attorneys' fees is well established. The petitioner must provide detailed time records, so a neutral judge can make an assessment of the time expended, evaluate the need for the services and establish the reasonableness of the fees. *See Hensley*, 461 U.S. at 424. Descriptions joined together in vague block billing, where neither the time spent, nor the assignment of the activity to a purpose can be ascertained, must be adjusted regarding fee calculations. *See also Norman*, 836 F.2d at 1299.

Plaintiffs' counsel request an award based on a total of 852.1 billable hours. At the outset, Defendant has no argument that the Plaintiffs' counsel are not fine public

interest lawyers, well experienced in these matters. The Defendant also agrees that the matter terminated with the Plaintiffs having prevailed. However, the fee expert for the Defendant claims that the documentation on time expended is vague and non-specific, and that Plaintiffs' counsel engaged, wholesale, in "block billing", making particularization of their efforts impossible. *See* Kiszkiel Decl. ¶ 8-9. The use of block billing prevents a court, or a client, from being able to evaluate whether the time expended on a particular matter is appropriate or reasonable. Mr. Kiszkiel points to examples where entries from Plaintiffs counsel contain multiple tasks, making it difficult to determine if all of the time billed should be compensated. *See id.* ¶ 13. One entry bills 2.5 hours for at least four separate activities. *Id.* Therefore, he claims it is difficult to ascertain how much time was spent on each activity and how much of the time should be compensated. Other examples include entries for three meetings, each for an indeterminate amount of time. *Id.* ¶ 16.

The next issue raised relates generally to the lack of specificity in Plaintiffs' counsels' time records. According to Mr. Kiszkiel, this lack of specificity makes it almost impossible to ascertain what the attorneys were doing and whether the time charged was appropriate. *Id.* ¶ 20. On occasion, the time entries made by some of the attorneys discuss in only very general terms what tasks were being performed for the plaintiffs. *Id.* ¶ 21. Some entries generally describe reviewing declarations and filings or setting up meetings and no particulars are provided. *Id.* ¶ 21-22. One attorney states that he spent 24 hours participating in a hearing and in pre and post hearing meetings with co-counsel. *Id.* ¶ 23. Thus, according to Mr. Kiszkiel, it is impossible

to ascertain how much time was spent in these meetings and what specific matters were being discussed. Mr. Kiszkiel also points out several more examples throughout his declaration.

Finally, the Defendant's fee expert claims that the record demonstrates significant overstaffing and overbilling because Plaintiff utilized 5 billing attorneys. Mr. Kiszkiel claims that this resulted in double billing at high rates, billing for the same activities by different lawyers, and activities taking place with all attorneys billing simultaneously.

After taking the time to review in painstaking detail these billing records, we conclude that, although there may be some minor instances of block billing and/or lack of specificity, they were not severe enough to prevent a neutral judge from making an assessment of the time expended. Plaintiffs' counsel, for the most part, provided the Court with detailed evidence that allowed it to determine the amount of fees to be awarded. However, some descriptions were joined together in vague block billing where neither the time spent, nor the assignment of the activity to a purpose, can be ascertained. The fee expert for the Plaintiffs, Mr. Hanlon, recognized some of the Plaintiffs' counsels' entries were deficient in either specificity or clarity. *See* Hanlon Decl. ¶ 8. As a result, he suggests a two percent across the board reduction in the attorneys' fees request. As referenced earlier, that same two percent reduction was adopted in counsel's pending petition as to the total fees requested.

This adjustment is certainly in order, but we conclude that it is not enough. A greater adjustment is necessary to account for billing entries that do not satisfy

counsel's burden of showing the reasonableness of all services performed to which an award of fees is due.

Turning to the next issue raised in opposition to the number of hours requested, we disagree with Defendant's blanket objection that Plaintiffs unnecessarily utilized a team of attorneys to prosecute this complicated case. Using a team of attorneys in a case of major importance is a common and acceptable practice in the private market. *See e.g. Norman*, 836 F.2d at 1302 ("There is nothing inherently unreasonable about a client having multiple attorneys."). Given that the vast number of hours requested were attributable to the two primary lawyers working on the case, the fact that some additional hours are being requested by lawyers assisting in various projects will not, by itself, render those hours ineligible for recovery. Again, however, the Court's finding above with respect to unspecific or vague billing entries will be applied to these lawyers' time entries as well.

In sum, Defendant argues that the fees be reduced to $198,000 because of the alleged block billing, lack of specificity, and overstaffing. As we do not believe that the block billing or lack of specificity was as problematic as Defendant contends, and taking into account the complexity of the litigation, a reduction that large is not warranted. The Court's assessment of the particular entries that raise issues of unreasonable block billing or lack of specificity reveals that a ten percent across the board reduction is reasonable (eight percent greater than the two percent reduction conceded by Plaintiffs' counsel's expert). That reduction takes better account of the relatively few instances of insufficient billing, while at the same time acknowledges

that the vast majority of time entries in this record are reasonable and justified. That ten percent across the board reduction in the Lodestar reduces the total awardable fees from $311,353.00 to $280,217.70.[8]

## C. *Calculation of Costs and Litigation Expenses*

Plaintiff's counsel also requests an award for all its costs incurred in the litigation. The total amount requested is $8,119.18. These costs include: filing fees, transcripts; service of process, totaling $2,130.97; travel, totaling approximately $1,979.33; postage/fax, totaling approximately $288.81; legal research, totaling approximately $3,570.67; and pro hac vice motions, totaling $150.00. Defendant has not responded or objected to the Court granting the full amount of these litigation costs.

The Court could of course scrutinize the costs requested with the same level of detail that it engaged in for the fee petition. The Court will not do so because of the Defendants' failure to satisfy their obligation to make specific and precise objections to the costs requested. In addition, the Court's review of the costs show that they are generally reasonable and recoverable. Therefore, the Court will grant in toto the amount of costs requested in this petition, which is $8,119.18.

---

[8] The parties' competing arguments acknowledge that the Court may, in the exercise of its discretion, adjust the lodestar through an across-the-board reduction. They disagree, of course, on what that adjustment should be in this case. But it is clear in this Circuit that the Court's review of an attorney fee application allows it to choose between an hour-by-hour analysis or an across-the-board reduction. In our judgment, an across-the-board reduction is all that is necessary to make the appropriate adjustments in this case. *See Kenny A. v. Perdue,* 2008 WL 2609238, at *7 (11th Cir. Aug. 28, 2008) ("where the billing records are voluminous . . . a district court may make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination").

### *III.   CONCLUSION*

Accordingly, based on a thorough review of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses [D.E. 128, 129], it is hereby ORDERED AND ADJUDGED**:**

1. Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**.

2. Plaintiffs shall recover from Defendant $280,217.70 in attorneys' fees and $8,119.18 in costs, for a total fee award of **$288,336.88**.

3. A fee judgment shall be entered for that amount in accordance with Fed. R. Civ. P. 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of April, 2009.

EDWIN G. TORRES
United States Magistrate Judge